Barbara Jeane MIRACLE, Plaintiff in Error,

v.

H. G. MIRACLE, Defendant in Error.

No. 38867.

Supreme Court of Oklahoma.

March 7, 1961.

Rehearing Denied March 28, 1961.

Charles Dunn, Tulsa, for plaintiff in error.

O. C. Lassiter, Tulsa, for defendant in error.

IRWIN, Justice.

On July 18, 1956, a divorce decree was entered terminating the marriage relationship between Barbara Jeane Miracle, now Bozzini, hereinafter referred to as plaintiff, and H. G. Miracle, hereinafter referred to as defendant. By said decree, custody of Jan Miracle, who was the only child born of the marriage, was divided between her parents. Plaintiff was given custody for nine months of the year and defendant was given custody the remaining months of the year. Jan was two years old at the time the decree was granted.

Plaintiff and defendant are citizens of this country and at the time the divorce was rendered, defendant resided in Bankok, Thailand, where he remained until his return to the United States in May, 1958. While in Thailand, defendant married a citizen of that country and they are presently living in California. He earns a substantial salary and has a suitable home in which to rear Jan.

Prior to defendant's returning to the United States, plaintiff, Jan and Euberto Bozzini, whom plaintiff had married following her divorce from defendant, moved from Washington, D. C., to Rome, Italy. Mr. Bozzini is a citizen of Italy and is employed in the diplomatic service of his country and earns a substantial salary with which he can provide for his family. When his tour of duty in Rome is completed, he will be reassigned but does not know to what country his next assignment will be. They have a suitable home in Rome, located in the American sector where children associate and play with children of the same nationality. Jan remained in Rome with plaintiff and her present husband until

the spring of 1959, at which time she returned to the United States.

In April, 1958, plaintiff filed an application to modify that portion of the divorce decree which related to the custody of Jan. By said application she sought full custody of Jan. On May 14, 1958, an order was entered modifying the decree in accordance with the application. The order was entered without notice to defendant and the court was not advised that plaintiff planned to remove Jan to Italy. Thereafter, on May 29, 1958, defendant filed a motion to vacate and set aside the above referred-to order, which motion was subsequently sustained. The custody provisions of the decree were therefore reinstated. Thereafter, on July 17, 1958, defendant filed a further motion to modify the decree so as to give him full custody of Jan. Notice was given plaintiff in Rome of the hearing that was subsequently held on this motion. Following a hearing on the motion, which was not attended by plaintiff, the decree was by order, under date of August 11, 1958, modified so as to give defendant full custody of Jan. Thereafter, plaintiff filed a motion to set aside the last referred-to order, following the filing of which motion defendant filed an application seeking an order of the court adjudging plaintiff in contempt of court because of her alleged violation of the judgment of the court relative to Jan's custody. These matters were set for hearing in February, 1959. Following a hearing at which both plaintiff and defendant were present, the court, on February 9, 1959, denied in part plaintiff's motion to vacate and ordered that plaintiff "should be found guilty of contempt of" court for removing Jan outside the continental limits of this country; that plaintiff should not be sentenced for contempt until June 3, 1959, and that if plaintiff delivered Jan to defendant before said date, her actions would be taken into consideration in sentencing for contempt. Jan was returned to defendant prior to June 3, 1959.

In the order which forms the basis of this appeal it was found that it would be for the best interest and welfare of Jan to be reared by defendant in the United States; it denied plaintiff's motion to modify except that "in the event the plaintiff can be present in the United States during the summer months, she shall be permitted to have said child for three months"; and ordered that Jan should not be taken outside the boundaries of the United States.

The substance of plaintiff's contention is that where the mother of a child of tender years is a fit and proper person, she should be given the custody of the child and the fact that a mother may remove a child beyond the continental limits of the United States does not override her preferential right to custody.

Defendant contends that the best interest of the child is the paramount guide in custody cases; that the trial court has discretion in such cases and unless said court's judgment is against the clear weight of the evidence or contrary to law, the same will not be disturbed on review.

Title 30 O.S.1951 § 11 provides that the awarding of the custody of a minor child by the court or judge should be guided by the following considerations:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question.

"2. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father."

Jan is a child of tender years (see Wallace v. Wallace, 145 Okl. 303, 292 P. 1111; and Blackwood v. Blackwood, 204 Okl. 317, 229 P.2d 602) and "other things being equal" her custody should be given to the plaintiff.

■■ We have consistently held that in awarding the custody of a minor, the court should give paramount consideration to what appears to be for the best interest of the child in respect to its temporal, mental and moral welfare. See Guess v. Guess, Okl., 274 P.2d 369. And, we have held the action of a trial court in refusing to modify a child custody order or judgment will not be disturbed on appeal unless so clearly against the weight of the evidence as to constitute an abuse of discretion. See Adams v. Adams, Okl., 294 P.2d 831. We said in Kuykendall v. Kuykendall, Okl., 290 P.2d 128, that the entire determination of the question must be in the light of what is to the child's best interest and where it affirmatively appears from the record that the trial court has failed to resolve the question in that manner, this Court will rectify the judgment in light of the evidence.

In examining the record we find neither party contends that the other is unfit by temperament, habits or otherwise, to have custody of the child. Both parents are above reproach and have shown a genuine affection and desire for the child and possess not only the necessary personal qualities but material advantages to provide a suitable home for her.

Jan is of tender years and from the evidence we have no hesitancy in concluding that if the plaintiff were living within the confines of the United States, we would determine and hold that plaintiff's motion for modification relating to the custody of Jan should have been sustained. Therefore, does the fact that plaintiff is not now living and probably will not be living in the United States create such a situation that she should be deprived custody of Jan in the present proceeding.

Under defendant's theory, the best interest of Jan would be for her to be reared in the United States and be given the benefits of the history and ideals of this Country. That if Jan were reared in a foreign country, she would be under the influence of foreign thoughts, ideologies and certain isms which would not be for her best interest or welfare.

■ Under some circumstances, defendant's theory might have substantial weight and be a determining factor. However, under the facts in the case at bar, the plaintiff has a suitable home in Rome, located in a sector where Americans live, their neighbors are Americans and Jan can associate and play with American children. If the plaintiff were granted partial custody, it would not necessarily mean that Jan would be reared on foreign soil all her life as the defendant would also be entitled to have custody of Jan during certain months of the year and any order entered now would not be conclusive as to her custody at a later date for we have repeatedly held that a trial court is vested with continuing jurisdiction concerning the custody and welfare of a minor child when a decree of divorce has been granted and may modify or change any order in this respect, whenever circumstances render such change proper. See Title 12 O.S.1951 § 1277, as amended; Reed v. Reed, Okl., 338 P.2d 350; and Morgan v. Morgan, Okl., 268 P.2d 855. Therefore, we must not necessarily consider what the facts and circumstances of the parents might be eight or ten years from now or even five years from now, as any consideration would have to be predicated on conjecture, but what would be for the best interest of the child presently and in the immediate future.

■ Our courts have recognized that mother love is a dominant trait in the heart of a mother. It is of divine origin, and in nearly all cases far exceeds and surpasses the parental affection of a father. Every one recognizes the fact that a child of tender years' needs the constant bestowal

of a mother's care and love. It is for these reasons courts are loath to deprive the mother of the care and custody of a child, if she is a fit and proper person. See Bruce v. Bruce, 141 Okl. 160, 285 P. 30.

The fact that plaintiff will be living outside the confines of the United States will not lessen her natural instinct for the love of the child to whom she gave life nor will it decrease Jan's need for her mother's care and love. Generally, a mother's love for her child and a child's need for its mother's loving care neither recognize nor admit the existence of a man made barrier. In this instance, if any barriers exist it would be the continental limits of the United States.

We can only conclude that since Jan is of tender years and the plaintiff can provide a suitable home for Jan, even though it may not be within the confines of the United States, that the needs of Jan for her mother's present care and love far exceed any natural barriers which may have been created. We further conclude that the question of custody should have been determined in the light of all existing facts and circumstances and the fact that the mother is not now living in the United States should not deprive her of the custody of Jan. If future events should dictate a modification of the custody provision so that Jan should then be reared in the United States, let the courts then make a determination of the issues involved, but under the circumstances in this case we cannot presently bottom our judgment on future contingencies which may or may not happen.

We therefore hold the trial court abused its discretion in granting the exclusive custody of the minor to the father. The cause is therefore reversed and remanded with instructions to the trial court to vacate each and every order relating to the custody of the minor child subsequent to the decree of divorce and to grant divided custody of the child as provided for in the original decree with the right and privilege to the plaintiff to remove the child from the continental limits of the United States under such safeguards or bonds as the trial court may deem proper.

Reversed and remanded with directions.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, HALLEY, JOHNSON and JACKSON, JJ., concur.